UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| ALYSSA COLUCCI | |
| | No. |
| VS. | |
| | <u>JURY TRIAL DEMANDED</u> |
| PAT'S PIZZERIA OF NATIONAL PARK, L.L.C. t/a PAT'S SELECT NATIONAL PARK | |

## <u>CIVIL ACTION COMPLAINT</u>

COMES NOW, Plaintiff, by counsel, and complains of defendants as follows:

### JURISDICTION

1. This Court has jurisdiction over this matter pursuant to the Americans With Disabilities Act of 1990, 42 U.S.C. Section 12111 et seq. (hereinafter "ADA") and 42 U.S.C. Section 2000(e) et seq. of the Civil Rights Act of 1964 as amended.  This Complaint has been filed within 90 days after issuance of a Notice of Right to Sue by the EEOC.

### PARTIES

2. Plaintiff, Alyssa Colucci, is a female, and presently resides at 801 Woodlawn Avenue, National Park, NJ 08063.

3. Defendant, Pat's Pizzeria of National Park, L.L.C. t/a Pat's Select National Park (hereinafter "National Park"), is a

limited liability company located at 702 Hessian Road, National Park, NJ 08063.

4. Defendant, Pats Select of Washington Township Limited Liability Company t/a Pats Select Pizza Grill (hereinafter "Washington Township"), is a limited liability company with a place of business located at 389 Ganttown Rd., Sewell, NJ 08080.

FACTS

5. Plaintiff suffers from both eczema and allergic contact dermatitis both of which are permanent conditions which cause a sensitivity to cosmetic products.

6. As a result of these skin conditions, plaintiff is unable to apply make-up to her face or she will develop skin lesions.

7. Defendants operated as affiliated restaurants in New Jersey, which jointly employed more than 15 people.

8. Plaintiff commenced employment with defendant National Park on or about December 5, 2016 as a server.

9. Plaintiff's hours with defendant National Park were over 20 hours per week, and she supplemented these hours by covering for additional shifts.

10. On about September 9, 2017, plaintiff started working some hours with defendant Washington Township in addition to hours she worked with defendant National Park.

11. During her employment with defendants, her supervisors included Spiro Karolidis (Male owner of both defendants), Poli Kontos (Male Manager of defendant National Park store), Nico Karolidis (Male Manager at defendant Washington Township store) and Ginger (Manager at defendant Washington Township store).

12. In about Mid-October 2017, Mr. Kontos informed plaintiff that he was told by Mr. Karolidis to tell her that she needed to start wearing red lipstick.

13. Plaintiff explained to Mr. Kontos that she could not wear any make-up, because she suffered from the aforementioned skin conditions which caused her to "break out" if she applied make-up of any kind to her face.

14. In about October 2017, plaintiff asked to be moved to the defendant Washington Township store because it was closer to her home and positions were available there, and defendants moved her there at about the start of November 2017.

15. After plaintiff started working primarily at the defendant Washington Township store, her base hours were about 19 per week.

16. Plaintiff supplemented her base hours at the defendant Washington Township store by doing extra shifts to cover for other servers.

17. Mr. Karolidis was at the defendant Washington Township store quite frequently and at about the start of December 2017, he began continually tell plaintiff that she needed to wear make-up and otherwise improve her appearance based upon what he wanted.

18. Mr. Karolidis did not require these things of the male servers.

19. Tthe first two times Mr. Karolidis approached plaintiff about wearing make-up, she responded that she was unable to do so due to her skin ailments.

20. Plaintiff explained to Mr. Karolidis that she could only wear eyeshadow and mascara and fill in her eyebrows, and that she could not put things on her cheeks or lips because it would cause her to suffer blisters and dry pouches.

21. Thus, plaintiff made a reasonable request for an accommodation based upon her permanent skin conditions.

22. Despite plaintiff's reluctance to wear make-up, Mr. Karolidis continued to make weekly comments to plaintiff, such as: a) "You need to wear more makeup;" b) "You need to do her hair better;" c) "You need to look like you are going out with your friends;" and d) "I have better looking girls at the other stores."

23. Plaintiff, who was only 17 years old at the time, was offended and embarrassed by Mr. Karolidis' offensive statements regarding her appearance.

24. Despite Mr. Karolidis' sexist demands to wear make-up or change her hair style or try to look like the other female servers and his insults regarding her appearance, plaintiff adamantly did not comply since she was unable to do so due to her medical ailments.

25. Mr. Karolidis' sexist demands to plaintiff were based solely upon her female gender and subjected her to disparate treatment as compared to her male co-workers.

26. Mr. Karolidis' sexist demands to plaintiff were based upon his false belief that plaintiff needed to conform to various female stereotypes (i.e. wear make-up) in order to attract customers to the store.

27. Mr. Karolidis' sexist demands had nothing to do with the operation of his business or the number of customers that his store serviced.

28. Mr. Karolidis' sexist demands subjected plaintiff to a hostile work environment based solely upon her female gender.

29. In retaliation of plaintiff's rejection of Mr. Karolidis' sexist demands set forth above, between December 2017 and January 26, 2018, plaintiff's hours were slowly reduced

until she was eventually completely removed from the work schedule.

30. When plaintiff asked to be scheduled for more hours, defendants would only offer her 3-4 hour shifts as a cashier on Saturday nights with no tips.

31. On January 26, 2018, plaintiff agreed to cover for another server at the defendant Washington Township store, but when she arrived, the store manager Ginger sent her home and told her that: "Nico [Karolidis] said it's not busy and we don't need you."

32. After January 26, 2018, plaintiff was no longer put on the schedule thereafter and thus she was terminated from employment by defendants.

33. The reason why defendants cut plaintiff's hours and terminated her employment was because of her sex and gender, because she rejected defendant's sexist demands, and because she was perceived as disabled.

34. Defendants were aware plaintiff suffered from permanent or chronic skin conditions which made it impossible for her to wear make-up on her face.

35. Defendants wrongly believed that plaintiff was permanently disabled from performing her job as a server in defendants stores due to her inability to wear make-up.

36. Defendants wrongly perceived that plaintiff suffered from a disability which prevented her from performing the essential functions of her job as server.

37. Defendants' conduct violated Title VII and the ADA because she was discriminated against and harassed based upon her female gender and because she was regarded as disabled.

38. Defendants are vicariously liable for the unlawful actions or inaction of its agents.

39. Defendants and their agents undertook a course of conduct toward plaintiff as set forth herein above, and caused her to be sexually harassed, retaliated against, and terminated and/or constructively discharged.

40. Plaintiff was subjected to humiliation, embarrassment, and mental anguish as a consequence of defendants' unlawful adverse employment action taken against her.

41. Plaintiff seeks lost pay, benefits, compensatory damages for pain and suffering, punitive damages, attorneys' fees and costs.

COUNT 1—TITLE VII—GENDER DISCRIMINATION

42. Plaintiff repeats paragraphs 1-41 as if more fully set forth herein.

43. By and through its conduct, defendants violated Title VII of the Civil Rights Act of 1964 as amended, 42 U.S.C. Section 2000e, et seq., by intentionally discriminating against plaintiff, harassing her, reducing her work hours and by terminating her employment because of her female gender.

## COUNT 2—ADA—DISABILITY DISCRIMINATION

44. Plaintiff repeats paragraphs 1-43 as if more fully set forth herein.

45. By and through its conduct, Defendants violated the ADA by intentionally discriminating against her, harassing her, reducing her work hours and by terminating her employment because she was regarded as disabled.

## COUNT 3—LAD—GENDER DISCRIMINATION

46. Plaintiff repeats paragraphs 1-45 as if more fully set forth herein.

47. By and through its conduct, Defendants violated the The New Jersey Law Against Discrimination (N.J.S.A. 10:5-12)(hereinafter "LAD") by intentionally discriminating against her, harassing her, reducing her work hours and by terminating her employment because of her female gender.

COUNT 4—LAD—DISABILITY DISCRIMINATION

48. Plaintiff repeats paragraphs 1-47 as if more fully set forth herein.

49. By and through its conduct, Defendants violated the LAD by intentionally discriminating against her, harassing her, reducing her work hours and by terminating her employment because she was regarded as disabled and because she was disabled under New Jersey law.

WHEREFORE, Plaintiff demands judgment on Counts 1 through 4 against defendants either individually, jointly or severally in an amount to be determined by a jury for lost pay and benefits, pain and suffering, emotional distress, mental anguish, harm to reputation, punitive damages, costs, reasonable attorney's fees, the amount of taxes due on any award, and such other relief as the Court deems just and fair.

Date: December 3, 2018  /s/ Samuel A. Dion

Samuel A. Dion, Esq.
Dion & Goldberger
1845 Walnut Street
Suite 1199
Philadelphia, PA 19103
215-546-6033 (tel)
215-546-6269 (fax)
samueldion@aol.com (email)
Attorneys for Plaintiff